UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.:

NICK KONAKIS, as Father and Next
Friend of KIRBY KONAKIS, a minor child,

    Plaintiff,
vs.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINES, INC.,
and TREE LIMIN EXTREME, LLC,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendants and alleges:

## PRELIMINARY ALLEGATIONS

1. Plaintiff, NICK KONAKIS, as Father and Next Friend of KIRBY KONAKIS, a minor child, is a citizen of the United States and a resident of the state of Nevada.

2. Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES, INC. ("CARNIVAL") is a Panamanian corporation with its principal place of business in Miami-Dade County, Florida.

3. Defendant, TREE LIMIN EXTREME, LLC (hereinafter "EXTREME") is, upon information and belief, a foreign corporation whose principal place of business is St. Thomas, Virgin Islands.

4. This matter in controversy exceeds the sum or value of $75,000 specified by 28 U.S.C. § 1332, exclusive of interest and costs. In the event diversity jurisdiction does not apply, then this matter is brought under the admiralty and maritime jurisdiction of this Court.

5. At all times material hereto, all Defendants, personally or through an agent:

   a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b. Were engaged in substantial activity within this state;

   c. Operated vessels in the waters of this state;

   d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 and/or 48.193;

   e. The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state;

   f. The Defendant, CARNIVAL, was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, *Glory*.

6. Defendants are subject to the jurisdiction of the Courts of this State.

7. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

8. At all times material hereto, CARNIVAL owned, operated, managed, maintained and/or controlled the vessel, *Glory*.

9. At all times material hereto, Defendant, EXTREME owned and/or operated the subject excursion, "Tree Limin Extreme Zipline Toure" which was offered, arranged for, sponsored, recommended, marketed, sold, co-operated and/or managed by CARNIVAL.

10. Defendant, EXTREME is believed to have entered into a contract with CARNIVAL for the protection of CARNIVAL's passengers, whereby Defendant, EXTREME agreed to subject themselves to the laws and jurisdiction of the State of Florida, consented to

personal jurisdiction over themselves, and consented to the venue of the United States District Court for the Southern District of Florida. Defendant, EXTREME is believed to have also agreed to indemnify CARNIVAL for the claims made in this Complaint within the meaning of Florida Statute § 48.193(d). Furthermore, Defendant, EXTREME is subject to the jurisdiction of this Court because they sell shore excursion tickets through CARNIVAL's website which is administered in Florida.

## FACTS COMMON TO ALL COUNTS

11. On or about July 25, 2015, Plaintiff and his family were paying passengers aboard the *Glory,* which was in navigable waters.

12. At all times material hereto, excursions from the *Glory* were advertised to passengers and the Plaintiff on CARNIVAL's website and in CARNIVAL's promotional material, including, but not limited to, brochures, and in cabin television commercials which contained CARNIVAL's logo.

13. At all times material hereto, CARNIVAL offered passengers aboard the *Glory* and the Plaintiff the opportunity to go on various shore excursions during the subject cruise, including, but not limited to, the subject excursion, the Tree Limin Extreme Zipline Tour.

14. At all times material hereto, CARNIVAL had a shore excursion desk aboard the *Glory* for the purpose of, *inter alia*, providing CARNIVAL passengers recommendations regarding shore excursions and charging CARNIVAL passengers for shore excursions.

15. At all times material hereto, CARNIVAL sold tickets for the Tree Limin Extreme Zipline Tour to passengers aboard the *Glory*, including the Plaintiff, during the subject cruise.

16. At all times material hereto, CARNIVAL did not provide any information to Plaintiff with respect to the name, address, owner and/or operator of the Tree Limin Extreme

Zipline Tour.

17. On or about July 28, 2015, as part of Plaintiff's cruise aboard the *Glory*, Plaintiff and his family, including his son Kirby, participated in the Tree Limin Extreme Zipline Tour in St. Thomas, Virgin Islands. This excursion was arranged for, sponsored, recommended, operated, marketed, and/or sold by CARNIVAL as part of the voyage on the subject cruise.

18. The Tree Limin Extreme Zipline Tour consisted of a high-speed ride along a zipline.

19. On or about July 28, 2015, as 8-year-old Kirby was awaiting his turn on the zipline, an EXTREME employee, in an effort to make Kirby's ride faster and more exciting, pulled Kirby's hanging body back then flung him forward on the zipline. This hurling motion by the EXTREME employee involuntarily forced Kirby's leg to get caught on a metal gate a few feet away which resulted in a massive chunk of flesh being ripped from Kirby's left leg.

20. At all times material hereto, Defendant, EXTREME was the agent(s) and/or apparent agent(s) of CARNIVAL by virtue of the following, such that CARNIVAL is estopped from denying that CARNIVAL was the agent for Defendant, EXTREME:

    a. CARNIVAL made all arrangements for the subject excursion without disclosing to Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

    b. CARNIVAL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without disclosing to Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

    c. CARNIVAL has a web page promoting the Tree Limin Extreme Zipline

        Tour which makes numerous references to CARNIVAL and none to the shore excursion entity; and/or

   d.   CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without disclosing to the Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

   e.   CARNIVAL recommended its passengers to not engage in excursions, tours and/or activities that are not sold through CARNIVAL; and/or

   f.   Until the point that Plaintiff actually participated in the subject excursion, the Plaintiff's exclusive contact concerning the subject excursion was with CARNIVAL; and/or

   g.   The fee for the subject excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by CARNIVAL; and/or

   h.   Plaintiff received a receipt exclusively from CARNIVAL for the purchase of the subject excursion.

21.   At all times material hereto, Plaintiff relied on the above, to his son's detriment, so as to believe that Defendant, EXTREME was the employee(s) and/or agent(s) of CARNIVAL, in choosing the subject shore excursion. At no time did CARNIVAL represent to Plaintiff in particular, or the ship's passengers in general, in a meaningful way that Defendant, EXTREME was not the agent(s) and/or employee(s) of CARNIVAL.

22.   At all times material hereto, CARNIVAL was the owner or co-owner of the subject excursion. At all times material hereto, CARNIVAL was responsible for, and liable for, the actions of Defendant, EXTREME with respect to the subject excursion.

23. In the alternative, at all times material hereto, a partnership and/or joint venture existed between Defendant, EXTREME by virtue of the following, whereby CARNIVAL and Defendant, EXTREME are jointly and severally responsible for the negligence of each other as partners of the partnership and/or joint venture:

   a. CARNIVAL and Defendant, EXTREME entered into an agreement whereby: CARNIVAL made all arrangements for the Plaintiff, on behalf of the partnership with Defendant, EXTREME, for the subject excursion being run by Defendant, EXTREME; and/or

   b. CARNIVAL marketed on CARNIVAL's website and/or in its brochures and/or on its ship, on behalf of the partnership with Defendant, EXTREME, the subject excursion being run by Defendant, EXTREME; and/or

   c. CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers, on behalf of the partnership with Defendant, EXTREME, about the subject excursion being run by Defendant, EXTREME; and/or

   d. Defendant, EXTREME provided the subject excursion boat to be used in the subject excursion; and/or

   e. CARNIVAL determined the amount of money charged for the subject excursion being run by Defendant, EXTREME; and/or

   f. CARNIVAL collected the amount of money charged for the subject excursion being run by Defendant, EXTREME; and/or

   g. CARNIVAL paid Defendant, EXTREME a portion of the sales of tickets for the subject excursion after the subject excursion tickets were sold; and/or

      h.      CARNIVAL shared profits and losses with Defendant, EXTREME for the subject excursion.

24. At all times material hereto, CARNIVAL was an agent for Defendant, EXTREME in the United States.

25. At all times material hereto, CARNIVAL was a partner in the subject excursion.

26. At all times material hereto, CARNIVAL operated and/or supervised the subject excursion.

27. At all times material hereto, Defendant, EXTREME owned and operated the subject excursion. Defendant, EXTREME was involved in providing the subject excursion to Plaintiff. At all times material hereto, Defendant, EXTREME was the agent(s), apparent agent(s), joint venture(s), servant(s), and/or employee(s) of CARNIVAL and at all times acted within the course and scope of their agency, apparent agency, joint venture, service and/or employment.

## COUNT I – NEGLIGENCE AGAINST CARNIVAL

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one through twenty-seven (27) as though alleged originally herein.

28. It was the duty of CARNIVAL to provide Plaintiff and his son Kirby with reasonable care under the circumstances.

29. On or about July 28, 2015, CARNIVAL and/or its agents, servants, joint ventures and/or employees breached its duty to provide Kirby with reasonable care under the circumstances.

30. Plaintiff's son Kirby was injured due to the fault and/or negligence of CARNIVAL and/or its agents, servants, joint ventures and/or employees for acts and/or omissions that include, but are not limited to, the following:

      a.      Failure to provide a safe excursion; and/or

b. Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

c. Failure to adequately inspect and/or routinely monitor excursion providers so as to ensure that the subject excursion was reasonably safe for cruise passengers and the Plaintiff; and/or

d. Failure to adequately inspect and/or routinely monitor the subject excursion so as to ensure that the equipment used in the subject excursion was reasonably safe for Plaintiff and cruise passengers; and/or

e. Failure to adequately inspect and/or maintain the equipment used in the subject excursion so as to ensure that it was reasonably safe for cruise ship passengers; and/or

f. Failure to provide an excursion that utilized reasonable safety measures that were routinely and adequately inspected and maintained; and/or

g. Failure to promulgate, enforce and/or comply with adequate policies and procedures to ensure that participants of the subject zipline excursion are warned about the danger posed by being swung about by an employee while on a zipline; and/or

h. Failure to require that Defendant, EXTREME promulgate, enforce and/or comply with policies and procedures to ensure that participants of the subject shore excursion are warned about the dangers posed by being swung about by an employee at the beginning of a zipline ride; and/or

i. Failure to promulgate, enforce and/or comply with adequate policies and procedures to ensure that the zipline tour was reasonably safe for cruise ship

passengers; and/or

j. Failure to require that Defendant, EXTREME promulgate, enforce and/or comply with policies and procedures to ensure that the zipline ride was reasonably safe for cruise ship passengers; and/or

k. Failure to promulgate, enforce and/or comply with rules, regulations, policies and practices concerning the safety of individuals riding on the zipline; and/or

l. Failure to require that Defendant, EXTREME promulgate, enforce and/or comply with rules, regulations, policies and practices concerning the safety of individuals riding on the zipline; and/or

m. Failure to advise the Plaintiff and other cruise ship passengers that CARNIVAL does not inspect and/or manage the employees of EXTREME to ensure the safety of individuals participating the in zipline tour; and/or

n. Failure to advise the Plaintiff and other cruise ship passengers that CARNIVAL does not provide safety training, safety advice, and/or safety equipment to the subject zipline excursion; and/or

o. Failure to ensure that properly trained and supervised persons operated the subject excursion; and/or

p. Having a shore excursion that was not competently operated; and/or

q. Failure to adequately inspect and review the subject shore excursion prior to offering this tour to passengers; and/or

r. Failure to retain an adequate zipline tour operator with knowledge regarding the safe operation of the zipline.

All of which caused Plaintiff's son, Kirby, to suffer severe and permanent injuries when Kirby was forcibly and involuntarily launched into a metal gate by an EXTREME employee, and had a chunk of flesh taken out of his left leg while participating in the Tree Limin Extreme Zipline Tour shore excursion.

31. CARNIVAL knew of the foregoing conditions causing the accident to Plaintiff's son and did not correct them, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. Prior to offering the Tree Limin Extreme Zipline Tour, CARNIVAL inspected the excursion and was aware of the dangers associated with high speed boat rides. Upon information and belief, CARNIVAL had knowledge of prior incidents regarding the subject excursion and did not correct the dangerous situation.

32. As a direct and proximate result of the negligence of CARNIVAL, Plaintiff's son Kirby was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature and Kirby will suffer the losses and impairments in the future. In addition, Plaintiff has lost the benefit of his family's vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

### COUNT II – NEGLIGENCE AGAINST DEFENDANT, TREE LIMIN EXTREME

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one through twenty-seven (27) as though alleged originally herein.

33. At all times material hereto, Defendant, EXTREME owned and/or operated the subject excursion.

34. It was the duty of Defendant, EXTREME to provide Plaintiff and Plaintiff's son with reasonable care under the circumstances.

35. On or about July 28, 2015, Defendant, EXTREME and/or their agents, servants, joint ventures and/or employees breached their duty to provide Plaintiff's son Kirby with reasonable care under the circumstances.

36. Kirby was injured due to the fault and/or negligence of Defendant, EXTREME and/or their agents, servants, joint ventures and/or employees for acts and/or omissions that include, but are not limited to, the following:

    a. Failure to provide a safe excursion; and/or

    b. Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

    c. Failure to adequately inspect and/or routinely monitor the excursion so as to ensure that the subject excursion was reasonably safe for cruise passengers and the Plaintiff; and/or

    d. Failure to adequately inspect and/or routinely monitor the subject excursion so as to ensure that the equipment used in the subject excursion was reasonably safe for Plaintiff's son and cruise passengers; and/or

    e. Failure to adequately inspect and/or maintain the equipment used in the subject excursion so as to ensure that it was reasonably safe for Plaintiff's son and cruise ship passengers; and/or

    f. Failure to provide an excursion that utilized reasonably safe

     equipment/transportation that was routinely and adequately inspected and maintained; and/or

  g. Failure to promulgate, enforce and/or comply with adequate policies and procedures to ensure that participants of the subject shore excursion are warned about the danger posed by traveling aboard a zipline; and/or

  h. Failure to promulgate, enforce and/or comply with adequate policies and procedures to ensure that the zipline used for the subject shore excursion was reasonably safe for cruise ship passengers; and/or

  i. Failure to promulgate, enforce and/or comply with rules, regulations, policies and practices concerning the safety of individuals traveling aboard the zipline; and/or

  j. Failure to adequately warn Plaintiff and his son of the dangers of participating in the subject excursion; and/or

  k. Failure to ensure that properly trained and supervised persons operated the subject excursion; and/or

  l. Having a shore excursion that was not competently operated.

All of which caused Plaintiff's son, Kirby, to suffer severe and permanent injuries when Kirby was forcibly and involuntarily launched into a metal gate by an EXTREME employee, and had a chunk of flesh taken out of his left leg while participating in the Tree Limin Extreme Zipline Tour shore excursion.

  37. At all times material hereto, Defendant, EXTREME had exclusive custody and control of the subject excursion.

  38. Defendant, EXTREME knew of the foregoing conditions causing Plaintiff's

accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant, EXTREME, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. Moreover, Defendant, EXTREME should have known that driving a zodiac style boat in swells at a high rate of speed is a dangerous situation that could cause serious injury.

39. As a direct and proximate result of the negligence of Defendant, EXTREME, Plaintiff's son Kirby was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of his injuries and suffered physical handicap. The injuries are permanent or continuing in nature and Plaintiff's son will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of his vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

### COUNT III – APPARENT AGENCY OR AGENCY BY ESTOPPEL CLAIM AGAINST CARNIVAL

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through twenty-seven (27) as though alleged originally herein.

40. At all times material hereto, Defendant, EXTREME was the apparent agent(s) of CARNIVAL.

41. At all times material hereto, CARNIVAL is estopped to deny that Defendant, EXTREME was their agent(s) or employee(s).

42. At all times material hereto, CARNIVAL made manifestations which caused Plaintiff to believe that Defendant, EXTREME had authority to act for the benefit of CARNIVAL.

These manifestations included:

    a.    CARNIVAL allowed its name to be utilized in connection with the advertising of Defendant, EXTREME; and/or

    b.    CARNIVAL allowed its name and logo to be used by the excursion company while at the pier; and/or

    c.    CARNIVAL made all arrangements for the subject excursion before Plaintiff ever boarded the ship or received their excursion tickets and never effectively disclosed to Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

    d.    CARNIVAL marketed the subject excursion using its company logo and name on its website and/or in its brochures and/or on its ship without effectively disclosing to Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

    e.    CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to Plaintiff that the subject excursion was being run by another entity (and/or entities); and/or

    f.    Until the point that Plaintiff actually participated in the subject excursion, the Plaintiff's exclusive contact concerning the subject excursion was with CARNIVAL; and/or

    g.    CARNIVAL recommended Plaintiff to not engage in excursions, tours or activities that were not sold through CARNIVAL as CARNIVAL has no familiarity with other tours or their operations; and/or

   h.  Plaintiff received a receipt exclusively from CARNIVAL for the purchase of the subject excursion; and/or

   i.  The fee for the excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by CARNIVAL.

  43.  Plaintiff reasonably relied on the above, to his and his sons' detriment, so as to believe that Defendant, EXTREME was the employee(s) and/or agent(s) of CARNIVAL in choosing the subject excursion.

  44.  It was reasonable to believe that Defendant, EXTREME was CARNIVAL's employee(s) and/or agent(s) because the Plaintiff booked, paid for and made all necessary arrangements for the subject shore excursion with CARNIVAL. CARNIVAL's actions caused Plaintiff to believe that Defendant, EXTREME had authority to act on CARNIVAL's behalf. At no time did Defendant, EXTREME represent to the Plaintiff in particular or the ship's passengers in a meaningful way that Defendant, EXTREME was not an agent or employee of CARNIVAL.

  45.  Plaintiff's reasonable reliance was detrimental because she would not have booked, paid for and/or participated in the subject shore excursion or incurred any injuries had the Plaintiff known the subject shore excursion was not operated by CARNIVAL.

  46.  The foregoing acts of negligence of CARNIVAL and/or Defendant, EXTREME was a direct and proximate cause of the Plaintiff's injuries and damages.

  47.  As a direct and proximate result of the negligence of Defendant, EXTREME, the Plaintiff was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of his injuries, suffered physical handicap, lost earnings and lost earning capacity both past and

future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of his vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

Dated this 27th day of July, 2016

                                                      Respectfully submitted,

                                                      FISCHER LAW FIRM, PLLC
*Attorneys for Plaintiff*
2888 East Oakland Park Blvd.
Fort Lauderdale, FL 33306
Telephone: (954) 860-8434
Facsimile: (954) 860-8584

By: */s/ John P. Fischer*
JOHN P. FISCHER, ESQ.
Florida Bar No: 99751
eservice@jpfischerlaw.com